UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br> VS. <br><br> REGIONS FINANCIAL CORPORATION, *et al*, <br><br> Defendants. | } <br> } <br> } <br> } <br> } CIVIL ACTION NO. H-07-2491 <br> } <br> } <br> } <br> } <br> } |

## **OPINION & ORDER**

Pending before the Court are Defendants Regions Financial Corporation and Regions Bank's (collectively, "Regions Bank") Motion for Summary Judgment (Doc. 16), Plaintiff Equal Employment Opportunity Commission's ("EEOC") Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 23), Region Bank's Reply to EEOC's Opposition to Defendants' Motion for Summary Judgment (Doc. 48), and EEOC's Surreply to Defendants' Reply to EEOC's Response in Opposition to Motion for Summary Judgment (Doc. 52).

Also before the Court are Regions Bank's Objections to and Motion to Strike Portions of Ava Mackey's Declaration and her EEOC Charge as Summary Judgment Evidence (Doc. 44), EEOC's Response to Defendants' Objection and Motion to Strike Ava Mackey's Declaration and EEOC Charge (Doc. 49), Regions Bank's Reply to EEOC's Response to Defendants' Objections to and Motion to Strike Portions of Ava Mackey's Declaration and her EEOC Charge as Summary Judgment Evidence (Doc. 53), and EEOC's Surreply to Defendants' Reply to EEOC's Response in Opposition to Objections and Motions to Strike Evidence (Doc. 56), as well as Regions Bank's Challenge to Evidence Submitted by EEOC in Opposition to

Defendants' Motion for Summary Judgment (Doc. 45) and EEOC's Response to Defendants' Challenge to the EEOC's Evidence in Support of its Response to Summary Judgment (Doc. 51).

Finally, before the Court are EEOC's Motion to Strike Defendants' Summary Judgment Evidence (Doc. 54), Regions Bank's Opposition to EEOC's Motion to Strike Summary Judgment Evidence (Doc. 55), EEOC's Reply to Defendants' Response to the EEOC's Motion to Strike Defendants' Evidence (Doc. 57), and Regions Bank's Surreply to EEOC's Response to Defendants' Opposition to EEOC's Motion to Strike Summary Judgment Evidence (Doc. 58).

Upon review and consideration of all these motions and the relevant legal authority, and for the reasons explained below, the Court finds that both parties' objections to summary judgment evidence (Docs. 44, 45, and 54) should be denied, and that Defendants' Motion for Summary Judgment (Doc. 16) should be granted.

I.  Background and Relevant Facts

This is a race discrimination in employment case.  The real party in interest, Ava Mackey ("Mackey"), an African American, was fired from her position as a bank teller by Regions Bank. Mackey first began working as a bank teller with Regions Bank in Gretna, Louisiana, in February 2004.  (Doc. 16-1, Mackey deposition at 16–17.)  Previously she had worked for several years as a part-time teller for Bank One.  (*Id.* at 15–16.)  After Hurricane Katrina devastated the region at the end of August 2005, it became clear that the bank's employees would not soon be able to return to work.  (*Id.* at 22, 27–28.)  Regions Bank encouraged Mackey to find employment at another branch until the Gretna branch reopened.  (*Id.* at 28–29.)  Mackey located a Regions Bank branch in Pearland, Texas, with an opening for a bank teller, and worked there from September 5, 2005 until October 28, 2005, when she was fired.  (*Id.* at 29–30; Doc.

16-4, Exh. D, Felicia Affidavit at 1.) The EEOC alleges that racial discrimination was the true reason Regions Bank fired Mackey, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Regions Bank counters that Mackey was fired not because of her race, but because she neglected to follow the bank's procedures when processing a check that later turned out to be fraudulent.

On the afternoon of Friday, September 16, 2005, the second full week of Mackey's employment at the Pearland branch, Albert Maki ("Maki") opened a new account, funding it with a check for U.S. $42,843.30 drawn on a Canadian bank, the Bank of Montreal. (Doc. 23 at 8; Doc. 16-4, Exh. D, Felicia affidavit at 2; Doc. 16-2, Exh. B.) Maki was well-known at the Pearland branch. (Doc. 42-1, Exh. D, Rios deposition at 19; Doc. 36, Atkinson deposition at 33; and Doc. 34, Exh. F, Vanarsdel deposition at 25.) Maki and his mother had been long-time clients of the Pearland branch, dating back to before it became a part of Regions Bank. (Doc. 34, Exh. F, Vanarsdel deposition at 27–29.) Shonda Jones ("Jones"), an African American, and a Financial Services Representative ("FSR") at the Pearland branch, assisted Maki in opening the new account. (Doc 16-1, Mackey deposition at 147–49; Doc. 30-2, Exh. G, Mackey declaration at 2.) Once Jones had opened the account for Maki, Jones consulted Mackey about depositing his check. (Doc. 16-1, Exh. A, Mackey deposition at 130–33.) As an FSR, Jones was responsible for opening and closing accounts, among other tasks, but lacked the independent authority to direct Mackey's processing of Maki's check. (*Id.* at 147; Doc. 16-4, Exh. D, Felicia affidavit at 3; Doc. 48-7, Exh. L, Felicia deposition at 93.)

Like most banks, Regions Bank has a policy of placing holds on deposited checks. (Doc. 16-4, Exh. D, Felicia affidavit at 2–3.) The standard hold for checks exceeding $5,000 is five business days for the first $5,000, and eleven business days for the remainder. (*Id*.) Checks

drawn on foreign banks, however, are subject to a different policy.  (*Id.*)  Rather than placing a standard hold on such checks, Regions Bank's policy was to place them on "indefinite hold" until actually honored by the foreign institution and the full proceeds forwarded to Regions Bank, a process that takes a few weeks.  (*Id.*; Doc. 16-1, Exh. A, Mackey deposition at 134–35.)  This policy for foreign checks, however, does not always apply to certain countries, among them Canada, whose checks are viewed as more reliable by Regions Bank.  (Doc. 26-7, Exh. 22 at 2.)  In the case of Canadian checks, the bank's policy was that "immediate credit may be given."  (*Id.*)

However, yet another applicable bank policy required tellers to treat any non-local and especially out-of-state checks as suspect.  (Doc. 26-6, Exh. 21.)  Since Maki's check drawn on a Canadian bank was obviously an out-of-state check, Mackey should have treated it as suspect.  This is strongly suggested by Mackey's own testimony, who, in her years as a bank teller, both at Bank One and Regions Bank, had encountered foreign checks, and who made it her usual practice, especially where large amounts were involved, to check with her supervisors regarding their processing.  (Doc. 16-1, Mackey deposition at 134–136.)  According to Regions Bank's policies, in the case of suspect checks, a bank teller should ask the teller supervisor or the branch manager for their approval.  (Doc. 26-6, Exh. 21 at 2.)  Mackey had two direct supervisors, the Pearland branch manager, Lindsey Vanarsdel ("Vanarsdel"), a Caucasian, and the teller supervisor, Anna Rios ("Rios"), an Hispanic.  Vanarsdel was not present when Maki opened the new account and deposited his fraudulent check.  (Doc. 34, Exh. F, Vanarsdel deposition at 30.)  Neither, according to her own testimony, was Rios.  (Doc. 42-1, Exh. D, Rios deposition at 33.)

The bank's policies are contained in Regions Bank's Teller Policy 05.02 (Doc. 26-6, Exh. 21), Guidelines for Accepting Deposits:

> Before accepting checks for deposit to a Regions account, review the items with consideration to placing a deposit hold on the money. Consider the following criteria:
> - Personal knowledge and banking relationship of the customer, specifically, the account balances kept with Regions, the age of the accounts and the depth of the relationship (i.e., multiple accounts).
> - The amount of the check. The specific amount will vary by location due to local market conditions.
> - Where the check is drawn. Non-local, especially out-of-state checks are suspect.
> - The type of item being deposited. Second party checks, drafts, re-deposited items, and checks drawn on the customer's account at another institution are suspect.
>
> Always place holds in accordance with <u>Regulation CC</u>.
> If uncomfortable with any of the four (4) criteria listed above, a manager or supervisor should be asked for his or her approval to place a deposit hold. It is the responsibility of a teller to protect the bank's money. Each year, money is lost because holds are not placed on questionable deposited items. If there is any reason to doubt the validity of the funds, a hold should be placed on the account.

In her deposition, Mackey testified that Jones came over from where Maki was sitting and requested that she process his check with a standard hold. (Doc. 28, Mackey deposition at 149–50.) Mackey inquired whether, since the check was drawn on a foreign account, she should "send it out," meaning put it on indefinite hold for the duration of the collections process for foreign checks, but Jones directed her to place only a normal hold on the check instead. (*Id*.) Despite her hesitation at complying with Jones' request, Mackey nonetheless placed only a standard hold, rather than an indefinite hold, on Maki's check. (*Id.* at 134–35; Doc. 23 at 8; Doc. 24-7, Exh. 7.) Mackey also did not check with her supervisors, neither of whom were at the bank at that time, prior to deviating from the standard policy regarding deposit holds. (Doc. 30-1, Mackey deposition at 188.) Instead, Mackey "just processed all the paperwork the way [Jones] wanted it." (Doc. 28, Mackey deposition at 153; Doc. 24-7, Exh. 7).

Maki subsequently withdrew funds from his new account after the five and eleven day holds elapsed. Regions Bank contends that, due to the improper hold placed on Maki's new

account, it lost approximately $24,000 before learning from the Bank of Montreal that Maki's check was fraudulent. (Doc. 16-4, Exh. D, Felicia affidavit at 3.)

Mackey was fired on October 26, 2005. (Doc. 26-5, Exh. 20.) Regions Bank's stated reasons for her discharge were that she improperly processed Maki's fraudulent check by failing to place it on indefinite hold as was appropriate for a foreign check and failed to seek supervisory approval before placing a standard hold on a suspect, out-of-state check. (*Id*.) Jones was fired for recommending to Mackey that the Canadian check not be sent to collections, but be processed with a normal hold instead. (Doc. 26-4, Exh. 19.) Regions Bank justified its decision by emphasizing that it was the failure to follow bank policy that caused its loss. (*Id*.) Vanarsdel was fired a few weeks later for this and other infractions. (Doc. 16-4, Exh. D, Felicia Affidavit at 3.)

Two other bank tellers responsible for allowing monies to be withdrawn on the fraudulent check, Brandon Atkinson ("Atkinson"), a Caucasian, and Shannon Van Auken ("Van Auken"), also a Caucasian, were disciplined but not fired. Atkinson received a written warning for cashing another Maki check for $8,000 without requesting proper identification on October 6, 2005. (Doc. 25-6 and 26-7, Exhibits 14 and 15.) Rios received a written warning for approving an override on the dollar limit for the same $8,000 Maki check and was also held responsible for Atkinson's failure to ensure that identification was documented on the check. (Doc. 25-5, Exh. 12.) Van Auken was censured for cashing three customer checks without obtaining proper identification. (Doc. 26-1, Exh. 16.)

According to Rios' testimony, several months after Mackey's termination, Regions Bank hired Brittney Ratliff ("Ratliff"), a Caucasian, as a bank teller at the Pearland branch. (Doc. 42-1, Exh. D, Rios deposition at 26–27.) Atkinson testified that Ratliff was later replaced by Tara

Taylor ("Taylor"), also a Caucasian. (Doc. 35, Exh. E, Atkinson deposition at 18–22.) However, according to Region Bank's personnel records, Ratliff was hired two months prior to Mackey's start date at the Pearland branch, on July 5, 2005, and Taylor was hired almost two years later, on August 6, 2007. (Doc. 48-2, Exh. G-1 and G-2.)

Mackey filed a complaint with the Texas Workforce Division Civil Rights Division on November 9, 2005. (Doc. 25-4, Exh. 11.) The EEOC subsequently brought this action on her behalf, pursuant to Section 706(f)(1) and (3) of Title VII. 42 U.S.C. § 2000e-5(f)(1) and (3). The EEOC filed its complaint with this Court on July 31, 2007. (Doc. 1.) Defendants' motion for summary judgment was filed on December 11, 2008. (Doc. 16.)

II. Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an

issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex.*

*Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

Regarding summary judgment evidence, Fed. R. of Civ. P. 56(e) states, in pertinent part, that:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or

> certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

A party cannot manufacture a fact issue simply by contradicting previous sworn testimony without explanation. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (citing, *inter alia*, *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984)). When an affidavit is impeached by prior sworn testimony without sufficient explanation, the court must view that affidavit with profound skepticism. *See Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 928 (S.D. Tex. 2002) (citation omitted). Indeed, it is within the court's discretion to disregard an affidavit altogether should the court determine that it is dealing with a "sham affidavit." *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (noting that the utility of summary judgment would be greatly diminished were courts unable to screen out "sham issues of fact"). Nevertheless, when an affidavit merely supplements or clarifies rather than contradicts prior sworn testimony, a court may consider that affidavit when evaluating genuine issues in a motion for summary judgment. *S.W.S Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

III. Discussion

Both parties raise objections to the summary judgment evidence. Regions Bank objects to several portions of Mackey's declaration summarizing her recollection of the events surrounding the processing of the fraudulent check as lacking personal knowledge and being inadmissible hearsay. These arguments are unpersuasive. Similarly, the EEOC contends that personnel records demonstrating hire dates should be stricken because (1) the EEOC previously unsuccessfully sought that discovery from Regions Bank; and (2) it is contradicted by sworn

testimony of employees at the Pearland branch of Regions Bank.  Although the Court frowns on unresponsive discovery, to the extent that these records are relevant, the evidence is now before the Court.  As for the second argument, the Court does not weigh summary judgment evidence and therefore declines to strike it for inconsistency.

The EEOC's claim of racial discrimination is reviewed under the burden-shifting framework outlined in *McDonnell Douglas*.  *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973).  "First, the plaintiff must establish a prima facie case of discrimination."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).  This burden is one of production and not of persuasion.  *Id.*  Once the plaintiff has established a *prima facie* case of discrimination, "the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802.  If the employer provides sufficient evidence to meet this burden, the plaintiff must prove that she "was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence."  *Reeves*, 530 U.S. at 143 (internal quotations omitted).  The plaintiff can meet this evidentiary burden by either providing evidence of intentional discrimination or establishing "the falsity of the employer's explanation." *Id.* at 147; *see Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574-75 (5th Cir. 2004).

To establish a *prima facie* case of race discrimination, then, the EEOC must show that Mackey (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or that similarly-situated employees outside the protected class were treated more favorably.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).  In work-rule violation cases, the Fifth Circuit permits

Case 4:07-cv-02491 Document 61 Filed in TXSD on 01/12/10 Page 12 of 14

plaintiffs to establish a *prima facie* case by demonstrating that they did not violate the work rule or that others outside the protected class violated the same work rule and were treated more favorably. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

Mackey concedes that she was familiar with and disregarded Regions Bank's policies by failing to place an indefinite hold on Maki's check without first obtaining supervisory approval. (Doc. 28, Mackey deposition at 150–55.) Maki deposited an out-of-state, foreign instrument, of a large amount, all of which point to treating the deposit as suspect under the bank's guidelines. As a suspect instrument, an indefinite hold should have been placed on the funds or a supervisor's approval obtained before placing only a standard hold. Neither action was taken.

Mackey is also unable to show that she was replaced by someone outside the protected class or that others outside the class violated the same work rule but were treated more favorably. Other similarly situated employees at the Pearland branch were disciplined for the same as well as other similar infractions. While some employees were only censured, Regions Bank distinguished based on the extent of the financial loss it suffered. Jones, an African American, and Vanarsdel, a Caucasian, were also terminated. Therefore, under either approach, the EEOC fails to establish a *prima facie* case of racial discrimination.

Even assuming, *arguendo*, that the EEOC could establish a *prima facie* case, it would still have to show that Regions Bank's proffered reason for her termination—that Mackey violated the bank's policies—is false. *Reeves*, 530 U.S. at 143. In *Reeves*, the Supreme Court held that it is sufficient that the proffered reason is false to sustain a judgment for the plaintiff, unless the demonstration of falsity so strongly leads to the conclusion that the real reason was unrelated to discrimination. *Reeves*, 530 U.S. at 147. "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially

since the employer is in the best position to put forth the actual reason for its decision." *Id*. at 148; *Cf. Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) ("When all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based [its] decision on an impermissible consideration").

Giving full credence to the EEOC's summary judgment evidence, there is nothing to demonstrate that Regions Bank's proffered reason for firing Mackey is false or mere pretext. Indeed, Regions Bank not only fired Mackey, but also Jones and later Vanarsdel for the same and similar violations that resulted in financial loss to the bank. That Mackey was new to the Pearland branch and had good intentions when she complied with Jones request to place a shorter hold on Maki's deposit than that required by Regions Bank's policies does not make the bank's reason false.

## IV. Conclusion

Accordingly, it is hereby ORDERED that Defendants Regions Financial Corporation and Regions Bank's Motion to Strike Portions of Ava Mackey's Declaration and her EEOC Charge as Summary Judgment Evidence (Doc. 44) and Challenge to Evidence Submitted by EEOC in Opposition to Defendants' Motion for Summary Judgment (Doc. 45) are DENIED.

It is further ORDERED that Plaintiff EEOC's Motion to Strike Defendants' Summary Judgment Evidence (Doc. 54) is DENIED.

It is further ORDERED that Defendants Regions Financial Corporation and Regions Bank's Motion for Summary Judgment (Doc. 16) is GRANTED.

SIGNED at Houston, Texas, this 12th day of January, 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE